UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CIVIL ACTION NO. 6:26-CV-00010-EBA

MISTY ADKINS,                                            PLAINTIFF,

V.             **MEMORANDUM OPINION & ORDER**

CLEMON W. HACKER, *et al.*,                          DEFENDANTS.

\*\*\* \*\*\* \*\*\* \*\*\*

Before the undersigned are several dispositive and evidentiary motions. Specifically, Plaintiff Misty Adkins has filed three motions for partial summary judgment, [R. 90; R. 91; R. 92], and Defendants Clemon W. Hacker and Gateway Tire Company, Inc. (Gateway) (collectively, the Defendants) have filed two evidentiary motions. [R. 85; R. 94]. These motions are now fully briefed and, therefore, ripe for review. [R. 96; R. 98; R. 100; R. 102].

### ADKINS' PARTIAL MOTIONS FOR SUMMARY JUDGMENT

Adkins has filed three motions for partial summary judgment. Specifically, she seeks summary judgment on the issues of liability and respondeat superior, [R. 90], past medical expense damages, [R. 91], and future medical expense damages. [R. 92]. Defendants oppose the motions, arguing that they should be denied as untimely. [R. 98]. And even if the Court were to consider them on the merits, Defendants argue that the motions are not supported by sufficient evidence. [*Id.*].

I. **Relevant Factual Background**

This case concerns alleged personal injuries suffered by Adkins in a motor vehicle accident on August 22, 2023. [R. 1; R. 13]. Adkins alleges that she was traveling southbound on U.S. 23 in

Pike County, Kentucky, when Hacker pulled out in front of her, causing her to strike the rear of his vehicle. [R. 13; R. 90 at pg. 1]. It is also alleged that Hacker was driving a truck on behalf of his employer, Gateway, at the time of the accident and was acting within the scope of his employment. [R. 13 at pgs. 2, 5]. Adkins's amended complaint seeks damages for past and future pain and suffering, past and future medical expenses, lost wages, and impairment. [R. 1-1 at pg. 18].

## II. Timeliness

Per this Court's prior Scheduling Order, all dispositive motions were to be filed no later than April 17, 2025. [R. 26]. Adkins' motions, filed on February 2, 2026, are nearly ten months late.

Dispositive motions filed after a court-imposed dispositive motions deadline should be construed as a request to modify the scheduling order. *Andretti v. Borla Performance Indus., Inc.*, 426 F.3d 824, 830 (6th Cir. 2005). Rule 16 provides for the modification of a scheduling order only "upon a showing of good cause" and with the Court's permission. FED. R. CIV. P. 16(b). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (citation and internal quotation marks omitted). Courts should also consider prejudice to the nonmovant. *Id.* (citation omitted).

Adkins's motions make no attempt to demonstrate good cause for filing these untimely. Moreover, the prejudice Defendants would suffer were the Court to grant these motions at this stage is manifest. Accordingly, having failed to meet her burden under Rule 16, these motions will be denied.

## III. Merits

Even if the undersigned were to consider the merits of Adkins' motions, their fate would be the same.

Under Rule 56, "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." FED. R. CIV. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex*, 477 U.S. at 324. The evidence, all facts, and any inferences that may permissibly be drawn from those facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)).

Adkins' motion for partial summary judgment on the issues of liability and respondeat superior does not demonstrate the absence of a dispute of material fact. To prevail on her negligence claims against Hacker, Adkins must demonstrate (i) "a legally-cognizable duty," (ii) "a breach of that duty," (iii) "causation linking the breach to an injury," and (iv) "damages." *Patton v. Bickford*, 529 S.W.3d 717, 729 (Ky. 2012). The applicable standard of care is "that of ordinary care—that is, 'such care as a reasonably prudent person would exercise under the circumstances.'" *Wright v. House of Imports, Inc.*, 381 S.W.3d 209, 213 (Ky. 2012) (citation omitted).

Adkins relies on an apparent video of the vehicle crash, police report, and Defendants'

failure to procure evidence to suggest comparative fault on her part. [R. 90]. But it does not appear that Adkins has filed any such video into the record. Nor does the police report serve as sufficient evidence to support summary judgment. Indeed, inadmissible hearsay—which Adkins admits, [R. 87], and the Court has already ruled, [R. 107], this report constitutes—"may not be used to support or oppose a motion for summary judgment." *Lucas v. Chance*, 121 F.Appx 77, 79–80 (6th Cir. 2005) (collecting cases). Adkins has thus failed to produce admissible evidence to support her claims at this stage. *See* FED. R. CIV. P. 56(c)(1)(B), (2). Moreover, even if this evidence were competent, Hacker's deposition testimony presents a genuine dispute of material fact as to whether he was exercising ordinary care at the time of the accident. [*See* R. 98 at pg. 30]; *see also Gilbert v. U-Haul Int'l Inc.*, No. 2013-CA-000772-MR, 2015 WL 136140, at *3 (Ky. Ct. App. Jan. 9, 2015) (occurrence of collision alone does not establish negligence), *discretionary review denied*. Thus, Adkins has failed to present sufficient evidence demonstrating the absence of a material dispute of fact as to liability. And because her respondeat superior claim rests on Hacker being found negligent, *see Southard v. Belanger*, 966 F.Supp.2d 727, 742–743 (W.D. Ky. 2013) (collecting cases), the motion as to that claim also fails.

Adkins's motions for partial summary judgment on the issues of past and future medical expenses similarly fail. [R. 91; R. 92]. In support of these motions, Adkins's points to her (presently) unauthenticated medical records and experts' uncontested testimony. [*See* R. 91-1; R. 91-2; R. 92-1]. Much like inadmissible hearsay, however, unauthenticated documents cannot be used in support of a motion for summary judgment. *See Alexander v. CareSource*, 576 F.3d 551, 558–59 (6th Cir. 2009) (collecting cases). Moreover, while true that the Defendants have no experts to counter Adkins's, a jury may decline to adopt Adkins's expert witness's opinion. *See, e.g., United States v. Newman*, 889 F.2d 88, 92 n. 2 (6th Cir. 1989) (citation omitted) ("Neither a

court nor a jury is bound to accept an expert's testimony to the exclusion of all other evidence."); *Hargett v. Dodson*, 597 S.W.2d 151, 153 (Ky. Ct. App. 1979) (citation omitted) ("The jury was not required to accept the experts' testimony presented [on the Defendant's] behalf as absolute truth."); *Morgan v. Morgan*, No. 2005-CA-001739-MR, 2006 WL 3040019, at *2 (Ky. Ct. App. Oct. 27, 2006) ("Medical expenses must not only be reasonable but they must be incurred as a result of the accident and when the evidence is not conclusive, a jury is not required to accept the medical bills submitted by the plaintiff. The statutory presumption [of reasonability] does not remove from the jury the ability to weigh the evidence and testimony and decide whether the medical expenses are reasonable *and* incurred as a result of the accident." (emphasis in original and internal citations omitted)). Accordingly, Adkins has failed to support her motions with sufficient evidence, so even if the motions were timely, they would fail on the merits.

## THE DEFENDANTS' MOTION TO STRIKE

Defendants move to strike Adkins's damages, which they allege were untimely disclosed. [R. 85]. Specifically, they seek to strike Adkins' updated damages requests in her Sixth, Seventh, and Eighth supplemental interrogatory responses relating to past and future pain and suffering, past and future medical expenses, and lost wages, loss of use, and impairment. [*Id.*]. Judge Weir already dismissed Adkins's claims for lost wages, loss of use, and impairment, [R. 71], so that matter is now moot. The rest of Defendants' motion remains contested. [*Id.*]. For the reasons explained below, their motion will be granted in part.

### I.    Legal Standard

Rule 26(a) requires parties in a civil action to make certain disclosures, including "a computation of each category of damages claimed by the disclosing party." FED. R. CIV. P. 26(a)(1)(A)(iii). The disclosing party "must also make available for inspection and copying as

under Rule 34 or the documents or other evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered." *Id.*

Rule 26(e) imposes on a disclosing party a duty to supplement "in a timely manner if the party learns that in some material respect the disclosure . . . is incomplete or incorrect." FED. R. CIV. P. 26(e). Rule 26(e) does not define what constitutes "a timely manner"; rather, it "necessarily depend[s] on the facts and circumstances of each case." *E.E.O.C. v. Dolgencorp, LLC*, 196 F.Supp.3d 783, 795 (E.D. Tenn. 2016) (citation and internal quotation marks omitted). "The duty to supplement discovery does not cease upon the close of the applicable discovery period." *Trapp v. Fed. Express Corp.*, 647 F.Supp.3d 567, 569 (E.D. Mich. 2022) (citation and internal quotation marks omitted).

If a party fails to uphold its obligations in this respect, Rule 37 requires the exclusion of that information "unless the failure was substantially justified or harmless." FED. R. CIV. P. 37(c)(1). Even where a party does not file a motion to compel under Rule 37, courts possess the "inherent authority" to issue sanctions for Rule 26 violations. *See Toth v. Grand Trunk R.R.*, 306 F.3d 335, 344 (6th Cir. 2002) (quoting *Alldread v. City of Grenada*, 988 F.2d 1425, 1436 (5th Cir. 1993)).

II.   **Damages for Past and Future Pain and Suffering**

Defendants first move to strike Adkins's disclosures relating to damages sought for past and future pain and suffering. [R. 85]. Adkins served eight supplemental interrogatory responses, seven of which came after the November 22, 2024, fact discovery deadline. [R. 33; R. 42; R. 44; R. 54; R. 72; R. 82; R. 83; R. 84]. Adkins served her Sixth, Seventh, and Eighth supplemental responses in January 2026—roughly two months before trial and nearly fourteen months after the close of fact discovery. [R. 82; R. 83; R. 84]. The responses increased Adkins's past and future

pain and suffering from $250,000 each to $750,000 each—a total increase of $1,000,000 between the two categories. [*Compare* R. 85-9 *with* R. 85-2, R. 85-3, *and* R. 94-1]. Defendants contend that these "drastic" increases were arbitrary and, given their timing, prejudicial. [R. 85; R. 100-1].

Adkins argues that the Defendants cannot claim prejudice or unfair surprise because they were on notice that her claims were worth millions of dollars because she sent them a demand letter seeking $3,000,000 in February 2025. [R. 96 at pgs. 2–3]. She also submits that there is no way to precisely compute pain and suffering, and this category of damages is "not amenable" to other damages disclosures contemplated in Rule 26. [*Id.* at pg. 3].

Adkins's eleventh-hour supplemental interrogatory responses violated her obligations under the Rules. Her first argument—that pain and suffering damages are not amenable to the typical Rule 26 disclosure and supplementation requirements—is unavailing, as this Court has made clear that "Rule 26(a)(1)(A)(iii) is unambiguous—it applies to *each* category of damages claimed." *Lucas v. Transamerica Life Ins. Co.*, No. 5:10-CV-76-KKC, 2011 WL 5148883, at *1 (E.D. Ky. Oct. 21, 2011) (emphasis in original). Moreover, "[w]ith respect to non-economic damages, although a plaintiff may be unable to precisely explain his quantification . . . the plaintiff is required to provide specific amounts of compensatory" damages sought. *Id.* (citation and internal quotation marks omitted). From the close of fact discovery and through her fifth supplementary interrogatory response, Adkins maintained that she sought damages "not to exceed $250,000" for each pain and suffering category. [*See* R. 85-9]. But after her January 2026 supplemental responses, the damages sought for these categories tripled. [*See* R. 85-7]. Such an increase is plainly material, and while Adkins did supplement, she did not appear to do so in a "timely manner." FED. R. CIV. P. 26(e); *see also Silvagni v. Wal-Mart Stores, Inc.*, 320 F.R.D. 237, 241 (D. Nev. 2017) (noting that, while "the Rules do not require in every case that a complete and

unchangeable damages computation be presented at the outset of the case," the "key inquiry" for purposes of Rule 26(e) "is whether the timing of the supplemental disclosure is reasonable based on when the information was available to the plaintiff").

Adkins contends that her failure to timely supplement was substantially justified or harmless, but the undersigned disagrees. When assessing whether a party's untimely disclosure is "substantially justified or harmless" under Rule 37(c)(1), the Sixth Circuit has instructed courts to consider five factors:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Howe v. City of Akron*, 801 F.3d 718, 747–48 (6th Cir. 2015) (citation omitted). A $1,000,000 increase in the damages sought for two categories less than two months before trial can certainly be considered a surprise and thus prejudicial, *Lucas*, 2011 WL 5148883, at *1 ("In general, the economic scope of a case informs decisions about resource use, burdensomeness, settlement, and potentially insurance issues."), and the belated nature of these supplementary disclosures weighs against any ability to cure the surprise. Moreover, Adkins's explanation for the delay in disclosing this substantial increase—that Defendants should have been aware that she would seek far more than $250,000 each for past and future pain and suffering because she made a demand of $3,000,000 to settle the case in February 2025, [R. 96 at pgs. 2–3]—is insufficient. *See, e.g.*, *May v. Wal-Mart Stores, Inc.*, 751 F.Supp.2d 946, 949 (E.D. Ky. 2010) (Thapar, J.) (nothing that "high-balling the initial settlement demand is Negotiation 101"); *Sfirakis v. Allstate Ins. Co.*, Civ.A. No. 91-3092, 1991 WL 147482, at *3 (E.D. Pa. July 24, 1991) (A demand letter "is nothing more than posturing by counsel seeking to stake out a position for settlement purposes. It cannot override" other pleadings "that unequivocally states that the damages do not exceed" a specific amount).

Thus, most of the *Howe* factors weigh against finding that Adkins's belated disclosure was harmless or substantially justified. Accordingly, Adkins's disclosures increasing the past and future pain and suffering damages to $750,000 will be struck. FED. R. CIV. P. 37(c)(1).

### III. Damages for Past and Future Medical Expenses

Next, Defendants seek to strike Adkins's claims for $102,528.83 in past medical expenses and $628,400 in future medical expenses. [R. 85 at pg. 3]. Adkins's recent supplemental interrogatory responses increased Adkins's past medical damages from $91,572.83 to $102,528.83, and her future medical damages from $500,000 to $628,400. [*Compare* R. 85-9 *with* R. 85-2, R. 85-3, *and* R. 94-1].

#### a.

Defendants first argue that Adkins's damages should be struck because she failed to provide an itemized list of medical expenses as requested in their interrogatories; rather, Adkins merely attached un-itemized copies of her medical expenses. [*Id.*]. And Defendants submit that it is "impossible to ascertain" from those attached expenses how Plaintiff arrived at either amount. [*Id.*]. Moreover, Defendants contend that Adkins's most recent supplementations violate the Rules because they inexplicably increase her future medical expenses by $128,400. [*Id.* at pg. 4].

In response, Adkins argues that the medical records speak for themselves, and a simple accounting of those records apprise Defendants of how she reaches her damages sought for past medical expenses. [R. 96 at pg. 5]. Adkins also contends that the Defendants never notified her of any deficiency with her discovery response or filed a motion to compel, instead waiting until right before trial to exclude her damages evidence. [*Id.*]. And regarding her future medical expenses, Adkins submits that her $628,400 figure was computed from her medical records and the deposition testimony of her experts, Dr. Rick Lyon and Dr. John Gilbert. [*Id.* at pg. 6].

Two interrogatories are relevant to this dispute. Interrogatory 21 requests that Adkins "[i]temize in detail all special damages you claim to have incurred as a result of the accident in question and attach to your answers copies of all bills, cancelled checks, or other documentary evidence upon which you base your claim." [R. 85-7 at pg. 3]. In response, Adkins directed Defendants to the "attached medical expenses." [*Id.*]. Similarly, Interrogatory 28 requests that Adkins "identify specifically each amount claimed" for, *inter alia*, past and future medical expenses, and requests that Adkins attach "all documents which you contend support the [damages] claimed." [*Id.*]. Adkins lists specific amounts for each of the identified categories of damages—including past and present medical expenses—and in support directs the Defendants to her "past and present medical records and . . . the testimony of any party or witness to this case." [*Id.* at pg. 4].

Rule 33(b)(3) requires that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." FED. R. CIV. P. 33(b)(3). Adkins's response to Interrogatory 28 fulfills this requirement. In her supplemental responses, Adkins identifies a range of damages sought for past and present medical expenses, and she attaches her "past and present medical records" in support. [R. 85-7 at pgs. 3–4]. Interrogatory 28 did not require her to specifically itemize her damages for these (or any) categories, [*see id.* at pg. 3], and there is no indication that her initial answers were untimely under Rule 33(b)(2). Accordingly, Adkins's initial answer to Interrogatory 28 was sufficient under the Rules. However, for much the same reasons that Adkins's Sixth, Seventh, and Eighth supplemental interrogatory responses were untimely as to her pain and suffering damages, those disclosures were also untimely as to her past and future medical expenses. FED. R. CIV. P. 26(e)(1)(A). Moreover, the same considerations weigh against finding these untimely disclosures to be harmless. *Howe*, 801 F.3d at 747–48.

Accordingly, because Interrogatory 28 was not timely supplemented, Adkins's Sixth, Seventh, and Eighth supplemental interrogatory responses as to past and future medical expenses will be struck.

Adkins's response to Interrogatory 21, however, was insufficient. While Adkins is correct that nothing in the Rules require her to provide an itemization, [R. 96 at pg. 5], Rule 33 makes clear that "[e]ach interrogatory must . . . be answered separately *and fully* in writing under oath." FED. R. CIV. P. 33(b)(3) (emphasis added). Interrogatory 21 required Adkins to respond with an itemized list of damages suffered and to attach copies of any documents supporting her claims. [R. 85-7 at pg. 3]. Because her response to Interrogatory 21 did not itemize her damages, it did not "fully" answer it, so Adkins effectively failed to answer. FED. R. CIV. P. 37(a)(4).

Where a party fails to answer interrogatories, Rule 37(d) provides that a court may order sanctions. FED. R. CIV. P. 37(d). Here, the undersigned declines to exclude all of Adkins's medical records/bills—when it appears they were otherwise generally made available to the Defendants, [R. 100-1 at pgs. 4–5]—merely because Adkins failed to provide a timely itemization of those records/bills. Accordingly, the Defendants' motion as to Interrogatory 21 will be denied.

**b.**

Defendants also contend that, to the extent an itemization of Adkins's medical bills were used to support Dr. Lyon's expert report and testimony,[1] Adkins did not provide an itemization of her medical bills until the day of Dr. Lyon's video trial deposition in violation of Rule 26(a)(2)(B)(i)–(iii). [R. 100-1 at pgs. 4–5]. Adkins claims that she made available for inspection and copying all documents upon which her damages figure is based and that she provided Defendants with medical authorizations for them to obtain their own copies of her medical records and bills. [R. 96 at pg. 5]. Additionally, Adkins submits that the itemization of which the

---

[1] Dr. Lyon sat for two separate depositions. The first, a discovery deposition, was held on March 12, 2025. [R. 102 at pg. 12]. The second, a video trial deposition, was held on March 25, 2025. [R. 94 at pg. 2].

Defendants complain is merely "a summary of the evidence, not the evidence itself." [R. 102 at pg. 2].

Rule 26(a)(2) provides that "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rules of Evidence 702, 703, or 705." FED. R. CIV. P. 26(a)(2)(A). Rule 26(a)(2) also mandates additional reporting requirements depending on the type of expert. Where the expert is "retained or specially employed to provide expert testimony," as is the case with Dr. Lyon, the disclosure must include a written report containing:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

FED. R. CIV. P. 26(a)(2)(B). The duty to supplement under Rule 26(e) "extends both to information included in the [retained expert's] report and to information given during the [retained] expert's deposition," and these supplementations must occur "by the time the party's pretrial disclosures under Rule 26(a)(3)." FED. R. CIV. P. 26(e)(2).

Here, Dr. Lyon's report thoroughly outlines Adkins's medical records on which he relies in crafting his expert report. [R. 96-4 at pgs. 6–14]. However, it contains no mention of Adkins's medical bills. [*See id.*]. This information plainly falls within two categories of information which should have been included in Dr. Lyon's report: "facts or data considered by the witness in forming" their opinion, and "exhibits that will be used *to summarize or support them*." FED. R. CIV. P. 26(a)(2)(B)(ii)–(iii) (emphasis added). Because Dr. Lyon's March 25, 2025, evidentiary

deposition was tantamount to his taking the stand live at trial, Adkins's introduction of this itemization at the evidentiary deposition without having previously disclosed it was improper. And to the extent it was intended to supplement Dr. Lyon's original report, it was untimely. FED. R. CIV. P. 26(e)(2).

Adkins argues that her untimely supplement was harmless. [R. 96 at pg. 2]. But this itemization document was a surprise to the Defendants, and since it was used to support Dr. Lyon's trial deposition testimony which will be presented at trial, there is no genuine ability for that surprise to be cured. Moreover, her explanation for the failure to timely disclose this information is insufficient. Accordingly, the *Howe* factors weigh against Adkins's position that the untimely disclosure was harmless. *Howe*, 801 F.3d at 747. Under these circumstances, the undersigned finds exclusion to be the appropriate remedy. FED. R. CIV. P. 37(c)(1). Accordingly, the Defendants' motion to strike Dr. Lyon's testimony, to the extent it concerns Adkins's damages based on the untimely disclosure of her medical bills, will be granted.

## THE DEFENDANTS' MOTIONS *IN LIMINE*

Defendants have filed several motions *in limine* to exclude several different categories of evidence or testimony. [R. 94]. Adkins does not object to some of Defendants' positions, including their motions to exclude: (i) evidence of expenses relating to claims for lost wages, loss of use, impairment, and driving expenses; (ii) evidence and testimony not previously disclosed which form the basis of any of her experts' opinions; and (iii) the introduction of expert reports into evidence. [*See* R. 102]. Defendants' motions as to these positions will therefore be granted. Defendants' other positions remain contested, [R. 102], and they will be considered in turn.

**I.  Motion *in Limine* to Exclude Evidence and Expenses relating to Claims for Un-Itemized Future Medical Expenses**

The Defendants first seek to exclude any evidence and expenses which were un-itemized regarding Adkins's claims for future medical expenses. [R. 94 at pg. 1]. For the same reasons explained above, the motion will be granted.

## II. Motion *in Limine* to Exclude Evidence of Medical Expenses Relating to TMJ Injury

Next, Defendants seek to exclude any evidence or medical expenses related to Adkins's alleged temporomandibular joint disorder (TMJ) injury, arguing that Dr. Lyon is not qualified to offer opinions relating to TMJ injuries because they are outside the scope of his expertise. [R. 94 at pg. 4].

Federal Rule of Evidence 702 permits expert opinion testimony if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

FED. R. EVID. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589–96 (1993). Courts have discretion in determining whether to determine whether an expert's testimony is reliable, and thus admissible. *See Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 668 (6th Cir. 2010) (citations omitted).

It is undisputed that TMJ injuries are outside the scope of Dr. Lyon's practice. However, a witness can be qualified as an expert based on their "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Thus, where the proponent meets their burden, this Court has found that physicians or other medical professionals are qualified to offer expert testimony on subjects outside the scope of their practice based on their "knowledge, skill, experience, training, or education." *See, e.g.*, *Coblin v. Depuy Orthopaedics, Inc.*, No. 3:22-cv-00075-GFVT-MAS, 2024 WL 1588752, at *3 (E.D. Ky, Apr. 11, 2024) (citation omitted) ("Although it is true that he is not

a vascular surgeon or cardiologist, the Court finds him qualified as an expert in pathology because of his knowledge, training, education, skill, and experience.").

It is Adkins's burden—by a preponderance of the evidence—to demonstrate that Dr. Lyon is qualified to present expert testimony. *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001). In support, she argues that Dr. Lyon is a board-certified orthopedic surgeon who has more than 30 years' experience, and that he has treated "thousands of patients" during his career. [R. 102 at pg. 5]. Dr. Lyon often treats and diagnoses patients with conditions outside the scope of his specialty, makes referrals, and follows up with them about their overall health. [*Id.*]. He often performs IMEs as a retained medical expert, and in that role he is frequently asked to review medical records, perform examinations, author expert reports, and provide testimony outside the scope of his specialty. [*Id.*]. Moreover, Dr. Lyon testified that, while he does not usually treat TMJ, he has treated patients with TMJ in the past, made the diagnosis, and referred them out to other doctors who specialize in handling the disorder. [*Id.*]. Based on the foregoing, the undersigned finds Dr. Lyon qualified to offer expert testimony on TMJ based on his knowledge, skill, and experience. Accordingly, the Defendants' motion to exclude Dr. Lyon's testimony relating to Adkins's alleged TMJ injury is denied.

### III. Motion *in Limine* to Exclude Evidence and Testimony relating to Claims and Expenses for a Future Knee Surgery

The Defendants' third motion *in limine* seeks to exclude evidence and testimony relating to Adkins's claims and expenses for a future right knee arthroplasty that Dr. Lyon testified Adkins may need. [R. 94 at pg. 7]. However, Adkins only seeks future medical expenses for a tibial tubercle osteotomy surgery, which was recommended by her treating orthopedic surgeon, Dr. Lindsay Remy. [R. 102 at pg. 11]. Because the Defendants' motion makes no mention of this latter

procedure, the issue appears uncontested. Therefore, Defendants' motion on this issue will be granted.

### IV. Motion *in Limine* to Prohibit Testimony from Plaintiff or Lay Witnesses on Medical Expenses

Finally, Defendants seek to prohibit Adkins or any other lay witness from testifying about Adkins's medical expenses on sufficiency and admissibility grounds. [R. 94 at pg. 13]. "In a diversity action, the admissibility of evidence is governed by the Federal Rules of Evidence[,] but the sufficiency is governed by state substantive law." *Laney v. Celotex Corp.*, 901 F.2d 1319, 1320 (6th Cir. 1990).

Defendants first argue that the testimony of Adkins or other lay witnesses is not sufficient to establish a connection between her medical expenses and the collision. [R. 94 at pg. 14]. "Kentucky law generally requires expert or medical testimony to establish that an incident legally caused a medical injury." *Lacefield v. LG Elecs., Inc.*, Civil Action no. 3:06-12-KKC, 2008 WL 544472, at *3 (E.D. Ky. Feb. 26, 2008). However, this requirement exists unless the causal connection would be "readily apparent to a lay person." *Cervetto v. Powell*, No. 1:14-cv-00075-HBB, 2016 WL 9460456, at *5 (W.D. Ky. June 20, 2016) (citing *Lacefield*, 2008 WL 544472, at *3). Adkins maintains that her experts' testimony will establish a causal connection between her injuries and the collision. [R. 102 at pgs. 13–14]. Moreover, "[t]he Kentucky Supreme Court has recognized that an automobile victim's medical bills are admissible 'without expert proof that they were necessary for and related to treatment for injuries caused by [the] accident.'" *Osborne v. Pinsonneault*, No. 4:07-cv-002-JHM, 2009 WL 1046008, at *1 (W.D. Ky. Apr. 20, 2009) (quoting *Cincinnati Ins. Co. v. Samples*, 192 S.W.3d 311, 318 (Ky. 2006)). Consequently, Adkins "may testify that she received medical treatment from a medical provider related to the injuries she

allegedly sustained in the accident and she can submit the bill[(s)] she received from that medical provider." *Id.* Accordingly, the Defendants' first argument fails.

Second, Defendants argue that Adkins's medical bills constitute impermissible hearsay under Rule 802 of the Federal Rules of Evidence. [R. 94 at pgs. 14–15]. Any determination on the admissibility of Adkins's medical bills, however, will be deferred to trial. Accordingly, the motion will be denied.

## CONCLUSION

Accordingly, having considered the matters, and being sufficiently advised,

**IT IS ORDERED** as follows:

1. Adkins's motions for partial summary judgment, [R. 90; R. 91; R. 92], are **DENIED**;

2. The Defendants' motion for leave to file a reply, [R. 100], is **GRANTED**;

3. The Defendants' motion to strike, [R. 85], is **GRANTED IN PART**. Adkins's Sixth, Seventh, and Eighth Supplemental Interrogatory Responses shall be struck to the extent they seek: (i) damages for past and future pain and suffering in excess of $250,000 for each category; (ii) past medical damages in excess of $94,477.83; and (iii) future medical damages in excess of $500,000. Additionally, Dr. Lyon's testimony from his March 25, 2025, evidentiary deposition shall be struck to the extent it concerns Adkins's medical damages based on the untimely disclosure of her medical bills; and

4. The Defendants' motions *in limine*, [R. 94], are **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** as to: (i) evidence and testimony not previously disclosed that forms the basis of any of Adkins's experts' opinions; (ii) the introduction of Adkins's experts' reports into evidence; (iii) the introduction of Dr. Lyon's testimony from his March 25, 2025, evidentiary deposition to the extent it offers opinions based on

improperly disclosed documents; and (iv) evidence and testimony relating to any claim or expenses for a future right knee arthroplasty. Defendants' motions *in limine* (i) to exclude Dr. Lyon's testimony concerning Adkins's alleged TMJ injury and (ii) to prohibit Adkins or other lay witnesses from testifying on past medical expenses, [R. 94], are **DENIED**. Signed February 26, 2026.



**Signed By:**

*Edward B. Atkins* ℰßA

**United States Magistrate Judge**